## RADULL v. OWL CREEK COAL CO.

(No. 2054; February 15, 1938; 76 Pac. (2d) 54)

For the appellant, the cause was submitted on the brief of *C. R. Ingle* and *Lin I. Noble* of Thermopolis.

For the respondent, the cause was submitted on the brief of *C. W. Axtell* of Thermopolis.

RINER, Justice.

This case arose under the Workmen's Compensation Law of this state and is a direct appeal proceeding to review a judgment of the district court of Hot Springs

County. The facts material to be considered in its disposition are not complicated, and briefly are:

John Radull, the employee and appellant here, who had been working for the respondent, Owl Creek Coal Company, for several years in different capacities, on February 11, 1936, was engaged in operating a coal cutting machine to undercut the coal in respondent's mine near Gebo, Wyoming. About eleven o'clock on the morning of that day he suffered an injury, described in his report of the accident, verified by him and filed May 1, 1936, thus: "I was pulling the coal cutting machine into the face and through a faulty drum on the machine the machine slipped back striking me on my left leg and injuring my back." The extent of his injury was stated in said report to be a "badly sprained back and injury to leg." The respondent filed its report of the accident May 19, 1936, but did not resist the workman's claim for an award of compensation.

June 1, 1936, the district court aforesaid gave the matter consideration and duly adjudged that compensation should be made to the workman, the order stating that he was "pulling the coal cutting machine into the face when the machine slipped back striking him on the left leg, causing injuries to leg and Sacro Iliac Strain. He suffered temporary total disability from Feb. 13th to 18th, 1936, and returned to work, but later was unable on account of the injuries to continue his work, and suffered temporary total disability from May 1st to June 1st, 1936, and the disability still continues. He is awarded compensation for the above time off, one month and five days, and the further sum of $50.00 per month until able to return to work or further notice." Radull appears to have received compensation under the terms of this award until at least December 1, 1936.

Under date of December 26, 1936, the employer filed a protest against the allowance of additional compen-

sation in the case, but the workman apparently continued to receive compensation follow-up orders monthly until May 1, 1937. On March 22, 1937, he filed in the district court aforesaid his petition and amended claim for compensation and asked that an award be made him for permanent total disability. This was resisted by an answer filed in behalf of the employer, in form a general denial, and it was averred also therein that the workman had already received excessive payments for the injury suffered, it being denied further that the accident complained of was the cause of the disability alleged. A reply denying the affirmative matter in the answer was filed.

The cause was heard by the court on May 13, 1937, no jury being in attendance, and a judgment and order of award was entered in favor of the workman. It was therein found that on account of the accident above mentioned he had received injuries to the lumbar vertebrae in the sacro-iliac region, which injuries rendered him "partially permanently disabled and incapacitated him from performing work at any gainful occupation to the extent of 25% of normal." He was, therefore, awarded the sum of $1000.00 for such disability and the further sum of $270.97 as temporary total disability from December 1, 1936, until the date of the judgment, May 13, 1937.

The workman, as above stated, has appealed from this award, asserting that it should have been for permanent total disability as claimed by him, and that in that respect it is not supported by the evidence. We are obliged to conclude otherwise.

After the accident, the workman, according to his own testimony, went back to the mine for the performance of light duties, which he apparently performed satisfactorily for about a month. During this time he was treated by the physician employed by the Miners' Hospital Association, who said that the workman was

in his office for about five or ten minutes immediately after the accident, and at that time the doctor applied tape to the region of the workman's body where he complained of pain. After this period of time Radull went to another doctor.

The medical evidence, as so often is true in cases of this character, was conflicting, but we think there is substantial evidence in the record upon which the court could predicate its finding and judgment.

Briefly outlined the record discloses that one physician called to testify by the workman stated that the latter was partially permanently disabled. Another of the employee's witnesses, also engaged in the practice of medicine, stated that the workman was permanently disabled from hard manual labor, and this was the view expressed by a third doctor, who also testified for the employee. The employer's medical witnesses were: One who was the Miners' Hospital Association doctor, referred to above, and who stated that he had attended Radull at different times for about a month and had taken and examined several X-ray photographs of the workman's pelvis and the region of his body where the injury was asserted to exist, but could find no injury to the vertebrae or bony structure, and had therefore recommended that the employee go to a specialist, as the witness could find nothing to account for the pain the man said he suffered. Another of respondent's witnesses was a physician especially skilled in X-ray practice in the medical profession, who examined a number of X-ray pictures of the workman's body covering the location of the alleged injuries and who testified that he could see no evidence of fracture or dislocation in the workman's pelvis and no evidence of fracture of his lumbar vertebrae; that the X-ray pictures so far as he could see did not disclose anything wrong with the employee's pelvis and hip joint in their entirety.

Respondent's third medical expert was a skilled or-

thopedic physician, who made two examinations of the employee. From the first one of these, the information he obtained was apparently quite unsatisfactory; he could not find any evidence of injury or disability on the part of the workman, the witness stating that the workman would not cooperate and aid him in the examination he was endeavoring to make. From the second examination made during recess of the trial of the case upon the offer of counsel for the employee, on which occasion he subsequently stated on the witness stand that he found the workman trying to help in the examination and "definitely more cooperative," he found, "There is some evidence that indicates he may have some disability attributable to that strain. I certainly don't believe it exceeds twenty-five per cent. It may be less, but it certainly isn't more than that, and I am giving him the benefit of the doubt on his subjective complaint, not so much on what I was able to find."

The trial judge saw all of these witnesses, as well as the employee, as they gave their testimony, and was, as we have so often said, in far better position than we are to conclude what weight and credibility should be accorded their statements. No tangible reason appears that we can see why his conclusion should be regarded as not correct.

Our attention is directed to the fact that when one of the workman's medical witnesses, who was present at the second examination of the employee by the surgeon above mentioned, was asked on rebuttal, "Did you discover anything further from that examination?", and the witness responded, "Nothing further than I have given testimony to.", he was then asked, "And briefly what are your conclusions on that?", the court excluded his answer when counsel for the employer objected that the evidence sought to be brought out was not rebuttal. It is urged that this was error. But the witness was immediately asked thereafter, "Your

former opinion was confirmed by this last examination, was it?", to which he responded, "Yes, sir." To have allowed the testimony asked for would have been simply repeating, to no purpose, the witness' statements previously given to the court.

Another doctor was called on rebuttal for the employee, and asked what in his opinion was "the proper treatment for a sacral slip." This was objected to also as not calling for rebuttal testimony, and the objection was sustained. It is asserted that this ruling likewise was error. There was no question in the case that we are able to find relating to improper treatment of the alleged injury and no claim was made by the workman on that account. The employer had nothing to do with the selection of doctors by the workman. We perceive no prejudicial error in these rulings.

We conclude upon the whole record that the judgment should not be disturbed. It will accordingly be affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.